IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**MARTINOUS MOORE**                                           **PETITIONER**

VS.                    **CASE NO. 5:09CV00036 BSM/HDY**

**LARRY NORRIS, Director of the**
**Arkansas Department of Correction**                       **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.     Why the record made before the Magistrate Judge is inadequate.

    2.     Why the evidence proffered at the hearing before the District

>    Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.
>
> 3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>    Clerk, United States District Court
>    Eastern District of Arkansas
>    600 West Capitol Avenue, Suite A149
>    Little Rock, AR 72201-3325

## DISPOSITION

Now before the Court is the application for writ of habeas corpus pursuant to 28 U.S.C. §2254 of Martinous Moore, an inmate in the custody of the Arkansas Department of Correction (ADC). Mr. Moore was found guilty of capital murder and aggravated robbery, and sentenced to life imprisonment without parole following an April, 2007 trial in the Circuit Court of Pulaski County. Mr. Moore unsuccessfully appealed the conviction, alleging the trial court erred in denying his motion for directed verdict, the trial court erred in denying his motion for a mistrial, and that hearsay testimony of an alleged co-conspirator was improperly admitted at trial. *Moore v. State*, 372 Ark. 579 (2008). Mr. Moore then filed a Rule 37 petition in state court. On August 14, 2008, the trial court denied Rule 37 relief, finding the petition was untimely submitted. See Exhibit 4 to docket entry no. 5.

Mr. Moore now advances the following claims for federal habeas corpus relief:

1. The evidence is insufficient to support the aggravated robbery conviction;

2. Witnesses Harvey and Peters were not credible; and

3. Hearsay testimony from witness Harvey regarding statements made by co-conspirator Gavino Mazurek improperly was admitted at trial.

The respondent contends that ground two is not properly before this Court due to the petitioner's failure to adequately raise the ground in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny. By an earlier Court Order, the petitioner was notified that dismissal of ground two was possible, and the petitioner was further notified of his opportunity to explain why ground two is not procedurally barred. Mr. Moore has filed a responsive pleading. *See docket entry no. 12.* We first consider whether ground two is properly before the Court, and will then consider the merits of the claims advanced by the petitioner.

In *Wainwright v. Sykes, supra*, the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court: that is, if he was aware of the ground, but failed to pursue it to a final determination. The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure. *See, also, Clark v. Wood*, 823 F.2d 1241, 1250-51 (8th Cir. 1987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. 1987). The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527 (1986), and *Murray v. Carrier*, 477 U.S. 478 (1986).

With respect to cause, these cases explain that the Court has "declined in the past to essay

3

a comprehensive catalog of the circumstances that [will] justify a finding of cause." *Smith v. Murray*, 477 U.S. 533-34.  However, one can discern from these cases several circumstances in which cause might be found:  first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 477 U.S. at 488; second, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. 1 (1984); or third, if the litigant failed to receive the effective assistance of counsel.  *See Murray v. Carrier*, 477 U.S. at 488.  In addition, there is one extraordinary circumstance where a federal habeas court may grant relief without a showing of cause: where a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Id.* at 496.

In his responsive pleading, Mr. Moore simply argues that witnesses Casey Harvey and Patrick Peters were not credible at trial[1].  This argument misses the point of explaining why ground two was not properly advanced in state court.  Our review of the record shows that ground two was not raised on direct appeal.  Since petitioner's Rule 37 petition was untimely, the claim was not properly advanced in his postconviction proceeding[2].  In order to raise the claim now in federal court, the petitioner bears the burden of showing cause and prejudice for his lapse in state court.  The argument advanced by Mr. Moore falls far short of demonstrating either cause or prejudice.  In addition, he

---

[1]Both of these witnesses were cross examined at length.  In addition, petitioner's counsel argued against these witnesses and their credibility in closing arguments.

[2]A review of the petitioner's Rule 37 petition shows that his third claim, entitled "No Credible Witnesses," is somewhat similar to the argument he raises here as ground two.  However, this claim was untimely raised in state court, depriving the state the opportunity to address its merits.  It should also be noted that the credibility of witnesses is typically not a cognizable claim in Rule 37 proceedings, but that such a claim is more akin to a challenge to the sufficiency of the evidence, which is a claim properly raised on direct appeal.  See docket entry no. 5-4.

fails to show his actual innocence, the one avenue which allows a petitioner to avoid the cause and prejudice requirement. In summary, ground two was not properly raised in state court, and the petitioner fails to show why this procedural failure should be excused. We recommend that ground two be dismissed as procedurally barred.

We now consider the other claims of Mr. Moore, beginning with his first point for relief – the evidence is insufficient to support the aggravated robbery conviction. This claim was raised and considered on direct appeal:

> The testimony at trial revealed that Moore and his co-defendants, Marques Tavron and Gavino Mazurek, agreed on a plan to rob Brady Alexander, whom Tavron and Mazurek knew because they attended the same high school. Casey Harvey, the girlfriend of Tavron's brother, testified that she had been living with Moore and Tavron in various motels and in Moore's car during the weeks leading up to the robbery. The car needed a new starter, which they could not afford. Mazurek knew that Alexander had made money by selling drugs. In addition, Patrick Peters testified that his friend Alexander was saving money to buy new rims for his vehicle and that the two of them together had accumulated three to four thousand dollars. According to Peters, Mazurek came to Alexander's home a few days before the robbery and observed Alexander and Peters counting the money. Harvey testified that she witnessed Mazurek suggest to Moore and Tavron that they rob Alexander by setting up a drug transaction, whereby they would lure him to a predetermined location, drive to an ATM, and force him to withdraw money for them.
>
> On the night of April 19, 2006, Alexander and Peters drove in Alexander's vehicle to the Waffle House restaurant on Scott Hamilton Road. Peters testified that they planned to meet Mazurek there and buy marijuana from him. Cellular phone records admitted into evidence showed that Alexander and Mazurek exchanged several calls during the evening. Peters and Harvey both testified that they overheard these calls, in which Mazurek told Alexander where to meet him. The records indicated that Mazurek was in the vicinity of downtown Little Rock when some of the calls were made, despite the fact that he told Alexander that he was in the Waffle House restroom. While Alexander and Peters waited in the parking lot for Mazurek to emerge, a person later identified as Moore approached the vehicle. When Moore said that he was "Gavino's boy," Alexander permitted him to enter the vehicle.

Soon after, Peters exited the vehicle and was standing in the parking lot when he was approached by Tavron, whom he knew from school. Tavron told Peters that Alexander was about to get "hit" and showed him a handgun tucked into his waistband. Peters immediately heard a gun fire from inside Alexander's vehicle, and he heard Alexander scream. The vehicle lit up with the blast, and Peters saw Moore leaning into the front seat. Harvey testified that she heard the gunshot from a room at the nearby Red Roof Inn, where she, Moore, and Tavron had rented a room for the night. She ran to the window, which looked out over the Waffle House parking lot, and saw Alexander's vehicle speeding away. Neither Moore nor Tavron were in the parking lot.

When Alexander's parents and the police were informed of the shooting, they drove to the Waffle House, where they could find neither Alexander nor his vehicle. At 10:27 P.M., a call came into Mrs. Alexander's cellular phone from a private number, later determined to be Tavron's. Mr. Alexander answered the call and heard his son on the line. Brady Alexander informed his father that he was driving around and that he could not return to the Waffle House because he was running out of gas. He also spoke with Officer Regina Goss of the Little Rock Police Department and told her that he was fine. However, Officer Goss testified that he sounded hesitant. This phone call was the last communication with Alexander. Phone records showed that a 911 call was placed from his telephone number between 10:00 and 10:30 P.M. The call was picked up by the cellular tower near Wrightsville.

The following day, Alexander's body was found in the vicinity of Wrightsville where his vehicle had been abandoned. Dr. Daniel Konzelmann, an associate medical examiner at the Arkansas State Crime Laboratory, testified that the cause of death was gunshot wounds to the neck and right thigh. Preston Williams, Moore's cousin, testified that sometime after midnight on April 20, he picked up Moore and Tavron at the Bada-Bing Club in Wrightsville. The club was located 2.4 miles from the site where Alexander's vehicle was found. Williams took the two to the Motel 6 on Scott Hamilton Road, near the Waffle House and the Red Roof Inn. According to Harvey's testimony, Moore and Tavron returned to the rented room at the Red Roof Inn several hours from the time they had left, and they appeared to have changed into someone else's clothes.

The evidence was further corroborated by David Sharp, who testified that Moore had confessed the crime to him while the two shared a cell at the Pulaski County jail. According to Sharp, Moore stated that he and Tavron forced Alexander out of the vehicle and into a sleeping bag on the ground, where Moore placed a pillow between Alexander's neck and the gun before firing. Alexander's body was found in the sleeping bag, with the pillow covering his face. Dr. Konzelmann testified that, during the autopsy, he found some small cloth fragments within the wound path, which suggested to him that there had been

some type of cloth between the muzzle and the skin at the time of discharge. He also stated that the wound in Alexander's neck was surrounded by a square-shaped bruise consistent with the imprint of the gun's muzzle, indicating that Alexander was shot at very close range.

A robbery is committed if a person employs or threatens to immediately employ physical force upon another person, with the purpose of committing theft or resisting apprehension immediately after committing theft. Ark.Code Ann. § 5-12-102(a) (Repl.2006). A robbery becomes aggravated if the person is armed with a deadly weapon, represents by word or conduct that he or she is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark.Code Ann. § 5-12-103 (Repl.2006). Substantial evidence indicates that Moore was armed with a deadly weapon for the purpose of committing theft. A person commits theft if he or she knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another, with the purpose of depriving the owner of the property, or obtains the property of another by deception or threat, with the purpose of depriving the owner of the property. Ark.Code Ann. § 5-36-103 (Repl.2006). As indicated by the testimony of Casey Harvey, Moore was part of a plan to take Alexander's money. This evidence is corroborated by the testimony of David Sharp, who stated that Moore described the robbery plan in his confession.

We reject Moore's argument that the aggravated robbery was not established because there was no evidence of a theft. A conviction of aggravated robbery does not require that a theft actually occur; it only requires that the perpetrator act with the purpose of committing theft or resisting apprehension immediately after committing theft. *See* Ark.Code Ann. § 5-12-102. We have stated that the focus of aggravated robbery is on the physical force used or threatened, and if the defendant has the intent to commit a theft, no actual transfer of property needs to take place for the offense to be complete. *Winston v. State,* 368 Ark. 105, 243 S.W.3d 304 (2006). Likewise, we can find no merit in Moore's contention that the evidence did not show his assent to the robbery plan. Moore and Tavron both clearly followed through with the plan, whether or not they verbally acknowledged their agreement at the time the plan was conceived.

*Moore v. State*, 372 Ark. 579, 581-584 (2008).

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted). Our inquiry is straightforward in this instance. Since we find no error in the state court decision, it follows that the ruling was neither contrary to or an unreasonable application of established federal law or an unreasonable determination of the facts. We have carefully reviewed the trial transcript, and the evidence amply supports the state court's ruling with regard to the sufficiency of the evidence. There is no merit to the petitioner's initial claim for relief.

The third claim of Mr. Moore is that hearsay testimony from witness Harvey regarding statements made by co-conspirator Gavino Mazurek improperly was admitted at trial. The respondent urges that this claim should be dismissed since it is couched in terms of state court error rather than as a constitutional error. The respondent is correct. A review of this claim, as raised in state court, shows that the petitioner complained only of error in applying the Arkansas Rules of Evidence. Following is the Arkansas Supreme Court's discussion and ruling on this

claim:

> Finally, Moore alleges that the circuit court erred in allowing Casey Harvey to testify as to Mazurek's statements to Moore and Tavron regarding the robbery plan. Moore argues that the statements were inadmissible hearsay not covered by the exception for statements of a co-conspirator made in furtherance of the conspiracy, because the existence of a conspiracy was not established. This court has held that trial courts are afforded wide discretion in evidentiary rulings. *Davis v. State,* 365 Ark. 634, 232 S.W.3d 476 (2006). We will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion, and, likewise, we will not reverse absent a showing of prejudice. *Id.*
>
> Our evidence rules indicate that a statement is not hearsay if it is offered against a party and is a statement by a co-conspirator of a party made during the course and in furtherance of the conspiracy. Ark. R. Evid. 801(d)(2)(v) (2007). Pursuant to this rule, Harvey's recitation of Mazurek's statements explaining the robbery plan would not be hearsay if Mazurek was a co-conspirator of Moore and if Mazurek made these statements during the course and in furtherance of the conspiracy. The fact that a conspiracy was not charged in Moore's case is irrelevant. We have held that there need not be a conspiracy count in the indictment to make the provisions of this rule applicable. *Smithey v. State,* 269 Ark. 538, 602 S.W.2d 676 (1980). Rather, the alleged co-conspirator must be connected to the conspiracy by evidence independent of the statement at issue. *Henderson v. State,* 329 Ark. 526, 953 S.W.2d 26 (1997); *Pyle v. State,* 314 Ark. 165, 862 S.W.2d 823 (1993).
>
> We hold that overwhelming evidence supports the conclusion that Moore conspired with Mazurek and Tavron. While Moore and Tavron may not have voiced their agreement with Mazurek's plan at the time the plan was formulated, their actions showed their mutual agreement. They carried out the steps of Mazurek's plan exactly as Mazurek had suggested. Communication among the three suggests that they were operating as a group of conspirators. The cellular phone records admitted into evidence showed several calls among them on the night of the robbery and murder. Harvey testified to one particular call she overheard between Moore and Mazurek, wherein Moore asked if Alexander was in the Waffle House parking lot as he looked out the motel-room window. Harvey stated, "Is he out there, is that his car is what I heard M.J. [Moore] say." Moore left the motel room immediately thereafter. Additionally, Sharp testified that Moore told him that "Gavino had set, was the middle man to set it up." Thus, independent evidence shows the existence of a conspiracy. The statements made by Mazurek to which Harvey testified were clearly offered against Moore and were made during the course and in furtherance of that conspiracy. Therefore, the circuit court did not err in admitting these statements.

*Moore v. State*, 372 Ark. at 585-586.

Federal habeas corpus relief is available only upon a showing that one is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Stated differently, errors of state law, such as claim three, do not warrant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62 (1991). For that reason, ground three should be dismissed.

Even if we were to presume the petitioner couched ground three as a federal constitutional violation, the ground is without merit. If liberally construed, the third claim could be viewed as a denial of the petitioner's due process rights.

> In order to establish a denial of due process, the petitioner must prove that the asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir. 1972), *cert. denied*, 410 U.S. 956 (1973), conspicuously prejudicial, *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3rd Cir. 1967), or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process. *Lisenba v. California*, 314 U.S. 219 (1941). In making this determination, the courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration.

*Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. 1976). As previously noted, we have reviewed the trial transcript. Our review persuades us that the ruling by the trial judge was not in error. It follows that there was no error of constitutional magnitude. The transcript shows petitioner was represented by two attorneys, who challenged each witness of the prosecution, emphasizing credibility issues and probing to find weaknesses in the case. The evidence, however, was overwhelming that Mr. Moore committed the crimes. The trial court's ruling regarding Casey Harvey's testimony was not wrong, and there was no due process violation in this regard.

In summary, the first ground of Mr. Moore is without merit. Ground two should be denied as procedurally barred. Ground three should be dismissed as raising only a state law challenge. Even assuming ground three to be a federal constitutional challenge, the ground is without merit. For the reasons set forth, the petition for writ of habeas corpus should be denied with prejudice and the case dismissed.

IT IS SO ORDERED this  30   day of June, 2009.

_____
UNITED STATES MAGISTRATE JUDGE